Good morning and may it please the Court, my name is Brian Mullins, I represent Paris Order denying his motion to suppress. Mr. Yancey was the passenger in a car driven by a woman who had an outstanding warrant out of Tazewell County, Illinois. They were driving in Rock Island County, Illinois. And the driver's warrant was for a violation of her probation on a retail theft charge. And Mr. Yancey and the passenger were initially stopped and we're not arguing that that stop was not initially proper and was a reasonable basis to seize Mr. Yancey. However, the purpose for the stop, we believe, ended once the driver of the car was placed in the back of the squad car, handcuffed, and had been arrested. After that point, Mr. Yancey was asked to revive the driver's purse. He was still remaining in the car that was driven by Ms. McCorkle, the driver. He provided the purse to the officer and then he asked if he could leave. The officer said, not yet. We're still, we still need to stay here. We're not done yet. He asked, I believe, two additional times after the driver was placed in the back of the squad car if he could leave and he was refused his request to leave. We are arguing that those requests to leave, once the driver was placed in the back of the squad car, constitutes an improper seizure at that point because the purpose for the stop had been executed by arresting the driver. Well, that really wasn't the end of the matter because the officers had an obligation to secure the purse in the car. Right? They couldn't just... Well, they... Abandoned everything at that point. They did have a continuing purpose for keeping him at the scene to determine whether he could drive the car away. Well, I think... Take custody of her purse. He, the officers only have authority to detain Mr. Yancey if they have reasonable suspicion that he had been engaging or was about to engage in criminal activity. No, this is tied, the disposition of the car and the purse are tied to the original traffic stop. Once she's under arrest and in the squad car, it's not the end of the matter. They have to do something about the car and the purse that was left in the car. But I don't, I don't believe that's Mr. Yancey's obligation given that he has no family connection or any other connection to... That's not the point. The point is whether the stop was unreasonably prolonged and it was not here because they weren't done yet. They had to do something with the car and the purse. They were done with Mr. Yancey as far as our position is, because Mr. Yancey had complied with the officers... But his status is not evaluated separately. He's a passenger. He's seized along with the driver in the car. And as long as that seizure has a valid basis and is validly continued, it's not unreasonable as to him. And the argument that the government is making and that the district court ruled on was that the stop was validly continued because the officers had to do something with the car and the purse. Well, I think there's an assumption that the district court made that Mr. Yancey was the only way for the officers to dispose of the car, but they had heard... I think the basis of the ruling is that the stop was reasonable as to him as long as the stop was not unreasonably prolonged. And the only argument that you could make that it was unreasonably prolonged would be to attack their determination to do something about the car and the purse. And that seems to me unassailable. I think once he makes the request to leave, they need reasonable suspicion to detain him. That's not the law. He's the passenger. He's reasonably seized along with the driver and the car, incident to the seizure of the driver and the car. And that reasonableness continues for as long as that seizure of the driver and the car is valid. Well, the law is that the purpose for he's there allowed to detain him until the purpose for the stop has been completed or they've developed reasonable suspicion to detain him. Right. My point is, and this was the district court's basis for her ruling, was that the stop continued to be valid until the officers figured out what to do with the car and the purse. And our position is that Ms. McCorkle's desire to have Mr. Yancey take possession of her car does not yield to Mr. Yancey's right to be free from from an unreasonable seizure. It was only Ms. McCorkle's request that he take possession of her car that I think led the officers to inquire or perhaps inquire into whether he had a valid license. They never actually asked Mr. Yancey if he could take possession of her car. So I they have offered that as an explanation at this point for why he was detained so that he could take possession of her car. But strangely enough, they never asked him that. And when he asked if he could leave, they never said, well, we would like you to take possession of her car. So we have your argument, right, Mr. Mullins. You indicate there's four times when Mr. Yancey asks to leave. Is that correct? Correct. I think that's undisputed. And I'm trying to interface that with because we've got two separate things going on. We've got Zier speaking with Yancey. We've got Costas placing McCorkle back in the squad car. It appears from the from the sequence. It was about 1.55 a.m. that McCorkle gets placed in the back of the squad car and is handcuffed and is seat belted. Correct? Correct. At that point, is that contemporaneous with the third request? Is that after the third request, but before the fourth request for Yancey to ask to leave? I think Ms. McCorkle was placed in the squad car. My recollection was that it was more or less contemporaneous with Mr. Yancey's second request to leave. Second or third? Second, I think, but certainly third. Second, it might be somewhat unclear, but certainly his third request to leave, which was to Mr. to Officer Zier. And then when Officer Costas asked him for the purse, he asked, he provided the purse and then asked Officer Costas if he could leave. So there were at least two requests to leave after Ms. McCorkle was placed in the back of the squad car. Possibly three. It's a little unclear, but we're arguing that certainly by that third request that he was seized at that point since Ms. McCorkle was in the squad car. Part of our analysis here is we're able to, in effect, find out what was going on in both these conversations because of body cams. And one of the things we're able to apparently see and hear is what McCorkle and Costas were discussing and determine is that some kind of a pretext to extend the stop, as well as Officer Zier's conversation with Mr. Yancey with regard to the purse, etc. Is the defense argument that somehow those interactions that are going on were pretext to extend the stop? Is that? I think Officer Zier's conversation with Mr. Yancey that he didn't know him, which was untrue, which Officer Zier admitted at the evidentiary hearing. I think that was a, for purpose of delay, you could say to extend the stop, whether it was to extend the stop or to wait for Officer Costas to arrive back on at the squad car, probably either of those. But I think Ms. McCorkle, in that conversation with Ms. McCorkle and Officer Costas, she certainly wanted to inquire about Mr. Yancey possibly taking the car, although she also asked Mr. Yancey to contact her mother to take the car. So that was another possibility. So I think Officer Costas is credible when he says that, when he said that Ms. McCorkle wanted Yancey to possibly take the car. He never shared that with Mr. Yancey. So he never asked if, you know, when Mr. Yancey asked to leave, he never asked Mr. Yancey, well, could you stick around to take Ms. McCorkle's car? We have to verify if you have a valid driver's license. Why does that matter? Because I think it shows that it was a, the reason for keeping Mr. Yancey on the scene was not necessarily to have him take the car. Objective intent doesn't matter. It's objective reasonableness. If it was objectively reasonable for the officers to secure the car and the personal effects of the person they had under arrest, then it's objectively reasonable to keep the passenger there in order to control the scene. Well, it's, I... His requests to leave are completely irrelevant to the objective analysis. No, I'm... And the seizure of him as the passenger occurred when the car was seized. So there's not some separate seizure point later on. Our position is that Mr. Yancey, the officers needed reasonable suspicion to detain Mr. Yancey. They objectively did not have that reasonable suspicion. Only if the original stop was unreasonably prolonged. And it's clear that the original purpose of this stop was not unreasonably prolonged because the car needed to be secured as did the personal effects of the person they had under arrest. And our position is that that is not, that does not yield to Mr. Yancey's right to be free from an unreasonable seizure. That's not the law. The law is that the passenger is validly seized if the seizure of the car and the driver are valid. So there isn't any support for that position. I understand the court's position. I will reserve the rest of my time. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, my name is Catherine Boyle on behalf of the United States. Your Honors, first for a point of clarification as to Judge Brennan's question regarding how many times Mr. Yancey had requested to leave. I believe that Mr. Yancey first requested to leave, and this is with the knowledge that Ms. Corkle was secured in the squad car at 155 AM. Mr. Yancey first requested to leave at 153 AM. He again requested to leave at 154 AM. And at 155 AM, I'm not sure if it was exactly contemporaneous, that was that third request to leave. So just for a point of clarification. The officers are free to ignore those requests to leave as long as the stop is not yet concluded? Yes, that's correct, Your Honor. And the stop was not yet concluded because the car hadn't been secured and her personal checks hadn't been secured. That's correct, Your Honor. Why isn't that the end of the story? It doesn't really matter what he was protesting. Well, I think Your Honor is hit on part of the crux of our argument, which is that this stop was not unreasonably extended. As Your Honor noted, this is a situation where although you have Ms. Corkle in the squad car, as Your Honor noted, we still are trying to figure out what to do with her purse. Officer Costas is still trying to figure out what's inside her purse. He still needs to figure out what to do with her car. He's still waiting for a callback from dispatch as to whether Mr. Yancey has a valid license and can take the car. There are just a number of factors here showing that the stop was in no way over. Right. So I'm not quite sure what the fuss is about why he was, or what the validity or effect of his request to leave. The officers have no obligation to honor any of those requests  He's not in control, they are. Oh, I completely agree with you, Your Honor. I just wanted to provide a point of clarification on the timing since Judge Brennan had asked. As I understand your position in the district court's ruling is that the stop was not over. Yes, Your Honor. The district court found that it was too narrow of a focus to say the stop was over just because Ms. Corkle was secured in the squad car. Ms. Corkle's being secured in the squad car did not mean that all of the tasks tied to the traffic stop were over, which under Rodrigo's officers are permitted to complete before the traffic stop is considered to be over. And that, of course, goes to our reasonable suspicion argument because to decide whether officers may conduct a pat-down of a passenger in a car, one first looks at whether the temporary detention of the passenger must be lawful, and we believe here it was for all the reasons we've discussed.  Um, we believe here the officers had reasonable suspicion that during this ongoing traffic stop, Mr. Yancey was armed and dangerous, justifying his pat-down. They never searched him. He bolted. Yes, and we believe that. So we don't have a search to be challenged here. So I'm not clear on why that line of argument is at all relevant to the actual facts on the ground. He was never frisked. Yes, Your Honor, although the officer did end up tackling Mr. Yancey, um, and he... Once he flees, all bets are off. They can chase him and take him down. There's nothing unreasonable about that, and there's no support for an argument that it is unreasonable. We agree with you, Your Honor. So there was no... There's no frisk to be challenged here because it never got to that point. We tell them to step out of the car because they want to frisk him, but after that, he flees. So we don't have a challenge to the basis for a search because no search ever occurred. Yes, Your Honor, and as Your Honor correctly notes, a flight from a lawful traffic stop would, of course, provide probable cause for that search. If Your Honors have no further questions, we'll rest on the arguments in our brief. All right. Thank you. Thank you, Your Honors. All right, Mr. Millins, your time had expired. Oh, no, I'm sorry. You had a little bit of time left. Go ahead. Unless there are additional questions, we have nothing to add. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.